**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, YOUNGSTOWN**

| | |
|---|---|
| **ROBERT AND APRIL ATKINSON,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiffs,* | |
| v. | |
| **NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

---

### CLASS ACTION COMPLAINT

Plaintiffs Robert Atkinson and April Atkinson, individually and on behalf a putative class of all other similarly situated ("Class Members" or "Class"), hereby alleges against Defendants Norfolk Southern Corporation ("NSC") and Norfolk Southern Railway Company ("NSRC") and based on personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based on investigation, as follows:

### INTRODUCTION

1.      Plaintiffs bring this case, seeking damages and equitable relief, individually and on behalf of the other Class Members, each of whom are residents, employees, property owners, or business owners located in and the February 3, 2023 Norfolk Southern Freight Train 32N derailment and subsequent "controlled" release in East Palestine, Ohio, which resulted in contamination of massive amounts of vinyl chloride, buytl acrylate, benzene residue, and other

1

toxic chemicals and combustible liquids. As a result of this derailment, the Class has suffered, among other things, loss of use and enjoyment of property, property damage, diminution in value of property, emotional distress, and economic damages as alleged more specifically below.

2.      Vinyl chloride is a known Group A carcinogen. According to the U.S. Environmental Protection Agency (EPA), short term exposure to high levels of vinyl chloride through inhalation can cause dizziness, drowsiness, and headaches. Prolonged exposure can result in organ damage and various cancers.

3.      This action is brought by Plaintiffs Robert Atkinson and April Atkinson on behalf of themselves and a class of all other similarly situated persons who live, own property, work, or own businesses within 30 miles of the site of the derailment of Norfolk Southern Freight Train 32N and subsequent "controlled burn" in East Palestine, Ohio.

4.      As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the February 3, 2023 train derailment and its aftermath, including but not limited to the "controlled burn" on February 6, 2023, Plaintiffs Robert and April Atkinson have suffered damages, including, but not limited to, (i) increased risk of cancer and organ damage from exposure to toxic chemicals, (ii) contamination of their property by dangerous levels of toxic chemicals dispersed by Defendants into the environment, (iii) diminution in the value of their property, and (iv) loss of use of their property.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because Plaintiffs are citizens of different states than Defendants and the amount in controversy exceeds $5,000,000 exclusive of interests and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred, in part, in the Northern District of Ohio.

## THE PARTIES

7.      At all relevant times, Plaintiff Robert Atkinson was an adult citizen of Ohio and the owner-occupier of real property located in Youngstown OH, approximately fifteen miles from the derailment and explosion site.

8.      At all relevant times, Plaintiff April Atkinson was an adult citizen of Ohio and the owner-occupier of real property located in Youngstown OH, approximately fifteen miles from the derailment and explosion site.

9.      Defendant NSC is a Virginia corporation with its principal place of business at 1200 Peachtree Street, NE, Atlanta, Georgia 30308.

10.      Defendant NSRC is a wholly owned subsidiary of NSC. NSRC is a Virginia corporation with its principal place of business at 1200 Peachtree Street, NE, Atlanta, Georgia 30308.

11.      At all relevant times, NSC and NSRC acted individually, as well as by and through one another and their respective officers, directors, executives, employees, contractors, subcontractors, and/or agents.

## FACTUAL ALLEGATIONS

### *The Derailment*

12.      On Friday February 3, 2023, Norfolk Southern Freight Train 32N was carrying abnormally dangerous and ultrahazardous chemicals including, but not limited to, vinyl chloride and butyl acrylate. Twenty of the train's cars were carrying the hazardous materials, which

included vinyl chloride, sulfuric acid, ethylene glycol monobutyl ether, butyl acrylate, benzene residue, and combustible liquids.

13.     At approximately 9:00 p.m. approximately 50 of the train cars derailed in the area of East Palestine, Ohio. Eleven derailed train cars contained hazardous chemicals that spilled onto the ground, into waterways, or were later burned off in a "controlled" burn.

14.     Flames could be readily seen emanating from the train before it derailed, approximately 20 miles before reaching East Palestine.

15.     The train was "backloaded" with about 40% of its weight in the rear third of the train.

16.     The train derailed after a railcar axle failed when a wheel bearing overheated, leading to a fire and then derailment.[1] The fire was large enough to be seen on Pittsburgh weather radar.[2] The smoke plume reached Beaver Falls, Pennsylvania by 10:40 p.m. on Friday, February 3, 2023. Shortly before the derailment, the crew was alerted by an alarm indicating a mechanical issue. The crew applied the emergency brake and the train derailed. 50 cars derailed and were damaged, and many of the damaged railcars breached.

17.     Defendants failed to extinguish the fire, which would burn until February 8, 2023.

18.     Officials issued a shelter-in-place order for the entire town of East Palestine, affecting roughly 5,000 people, and an evacuation order was put in effect within a mile of the train derailment at 1020 East Taggart Street as of early Saturday, February 4, 2023. Residents of Mahoning County and other surrounding communities were advised to stay indoors and shelter in place on February 6, 2023.

---

[1] NTSB Issues Investigative Update on Ohio Train Derailment (accessed February 23, 2023).
[2] East Palestine, Ohio train derailment fire was visible on Pittsburgh, Pennsylvania radar (wkbn.com) (accessed February 23, 2023).

19.     At or around 4:30 p.m. on Monday, February 6, 2023, NSC and/or NSRC intentionally conducted a "controlled release" which created a large plume of thick black smoke and a mushroom cloud which dispersed toxic hydrogen chloride and phosphene gas into the atmosphere, causing further contamination by, and exposure to, toxic chemicals. The plume was ultimately trapped by an inversion layer at approximately 3000 feet, and it then spread horizontally like a thick cloud, as demonstrated in the following photo:[3]



20.     Upon information and belief, the "controlled release" of vinyl chloride released hundreds of thousands of pounds of phosgene and hydrogen chloride into the air, the latter of which was used as a weapon in World War I.[4]

---

[3] Fifth negligence suit would expand area impacted by toxins from - WFMJ.com (accessed February 23, 2023).
[4] Concerns remain after East Palestine spill and plume | News, Sports, Jobs - The Herald Star (heraldstaronline.com) (accessed February 23, 2023).

21.     Fumes, sediment, and a rise in particulate matter from the derailment, fire, toxic chemical disbursement and subsequent explosion have been reported throughout an area extending far beyond the borders of East Palestine. Such particulate matter is particularly dangerous to health and has been linked to eye, lung and throat irritation, trouble breathing, and lung cancer among other health issues.

22.     The EPA particulate pollution monitor in Youngstown, Ohio, more than 20 miles from the derailment site, detected concentrations of fine particulate matter that increased by five times between February 3 and February 8, 2023.

23.     Upon information and belief, contamination and damage to local streams, rivers and other bodies of water occurred from the release of toxic chemicals and/or the water runoff from the derailment and resulting chemical explosion, leading to the death of fish, wildlife, and other local farm or household animals.

24.     According to the EPA,

"[r]eleases of hazardous substances occurred after the derailment and subsequent fires Releases to the air occurred when hazardous substances spilled from the rail cars, when smoke from burning rail cars was produced, and hazardous substances including vinyl chloride, phosgene and hydrogen chloride were released. Releases to surface water occurred when liquid product exited rail cars and also when run-off from firefighting efforts at the derailment location moved through a ditch to Sulphur Run, which joins Leslie Run, to Bull Creek, to North Fork Little Beaver Creek, to Little Beaver Creek, and then the Ohio River. Releases to soil occurred (1) when liquid product exited rail cars after the derailment (2) when run-off from firefighting efforts at the derailment location flowed from the right-of-way to adjoining property, and (3) when ash from the burns landed on soil. Local citizens reported smoke from the burns observed over the State of Ohio and the Commonwealth of Pennsylvania."[5]

_____

[5] CERCLA Docket No. V-W-23-C-004.

25.     To date, at least 3,150 cubic yards of contaminated soil have been removed from the area of the derailment. A total of 942,000 gallons of contaminants and contaminated liquid have been removed from the immediate site.[6]

26.     Defendants failed to immediately report the derailment, and did not inform federal authorities until nearly two hours after the derailment. Defendants further failed to provide firefighters with information as to the hazardous materials on board, which allowed the fire to continue to grow and impeded first responders' ability to extinguish it. In addition, Defendants failed to explore alternative courses of action to the controlled burn, preferring instead to re-open the tracks as quickly as possible. Defendants' failure to convey key information hampered authorities' ability to evaluate and explore safer alternatives to the controlled burn.

27.     Upon information and belief, Defendants discharged more than 1,000,000 pounds of vinyl chloride and other hazardous materials into the environment, with a reach that dwarfs the mandatory evacuation and shelter in place orders and which will have long-range and long-term consequences.

28.     Upon information and belief, the derailment, subsequent chemical spill, fire, toxic explosion, and days-long fire were caused by the negligence, carelessness, recklessness, and/or intentional acts of the Defendants in the ownership, operation, inspection, maintenance and repair of the subject train, rail cars, and track system, as well as the design and performance of the "controlled release."

*Plaintiffs and Class Members Were Exposed to Toxic Fumes and Substances*
*As a Result of Defendants' Actions.*

---

[6] East Palestine Update - 2/16/23 - 1:15 p.m. | Governor Mike DeWine (ohio.gov) (accessed February 23, 2023).

29.     Train 32B was carrying a number of hazardous materials, including vinyl chloride, sulfuric acid, ethylene glycol monobutyl ether, butyl acrylate, benzene residue, and combustible liquids.

30.     Vinyl Chloride monomer ("vinyl chloride") is classified by the Department for Health and Human services as known to be a human carcinogen.[7] The Environmental Protection Agency (EPA) has classified it as carcinogenic by the inhalation, oral, and dermal routes.[8]

31.     Vinyl chloride exposure can cause dizziness, headaches, fatigue, respiratory tract irrigation, wheezing, chemical bronchitis, nausea, vomiting, and diarrhea.[9] Chronic exposure to vinyl chloride can cause permanent liver injury and liver cancer and neurologic or behavioral symptoms.[10]

32.     Specifically, just minutes of exposure to high, but attainable concentrations (over 1,000 ppm) of vinyl chloride may cause central nervous system depression with effects such as dizziness, drowsiness, disorientation, tingling, numbness or burning sensation of the hands and feet, impaired vision, nausea, headache, difficulty breathing, cardiac arrhythmias, unconsciousness, or even death.

33.     The Occupational Safety and Health Administration (OSHA) mandates that no employee may be exposed to vinyl chloride at concentrations greater than 1 ppm averaged over any 8-hour period; no employee may be exposed at concentrations greater than 5 ppm averaged

---

[7] Vinyl Chloride | ToxFAQs™ | ATSDR (cdc.gov) (accessed February 23, 2023).
[8] Vinyl Chloride | ToxFAQs™ | ATSDR (cdc.gov) (accessed February 23, 2023).
[9] Vinyl Chloride | Medical Management Guidelines | Toxic Substance Portal | ATSDR (cdc.gov); vinyl-chloride.pdf (epa.gov) (accessed February 23, 2023).
[10] Vinyl Chloride | Medical Management Guidelines | Toxic Substance Portal | ATSDR (cdc.gov) (accessed February 23, 2023).

over any period not exceeding 15 minutes; and that no employee may be exposed to vinyl chloride by direct contact with liquid vinyl chloride.

34.     The substance's odor threshold – the concentration when most people can smell it – is <u>3,000 ppm in the air</u>, according to the ATSDR.[11] According to the CDC, odor is not an adequate warning of hazardous concentrations of vinyl chloride.[12] In other words, the threshold at which an odor is detectable – as residents of East Palestine have reported – far exceeds the maximum exposure mandated by OSHA.

35.     Plaintiffs and the Class Members have been exposed to toxic substances and fumes as a result of Defendants' actions, and will continue require medical monitoring over and above what they would have if they were not exposed to known carcinogens as a result of the derailment. The increased threat to the Plaintiffs' and Class Members' health can only be mitigated with a comprehensive monitoring program.

<em><u>Robert and April Atkinson</u></em>

36.     As a direct result of the derailment and subsequent release of toxic chemicals into the environment covering an area of many miles, Plaintiffs and Class Members have suffered a decrease in the market value of their properties, loss of use of their property, and physical symptoms of exposure to the hazardous chemicals released into the environment by the Defendants. Their property has also suffered stigma.

---

[11] <u>Vinyl Chloride | Medical Management Guidelines | Toxic Substance Portal | ATSDR (cdc.gov)</u> (accessed February 23, 2023).
[12] <u>Vinyl Chloride | Medical Management Guidelines | Toxic Substance Portal | ATSDR (cdc.gov)</u> (accessed February 23, 2023).

37.     Robert and April Atkinson have suffered a loss of use of their property, as they were forced to leave their home February 6 through February 10, 2023 out of concern that the toxic chemicals released into the environment by Norfolk Southern would harm their family.

38.     Since February 3, 2023, Robert and April Atkinson and their children have all suffered symptoms, including respiratory symptoms, headaches, and nausea, as a result of the derailment and subsequent release of toxic chemicals into the environment.

39.     Plaintiffs continue to regularly test their water and are currently relying on bottled water for consumption.

## CLASS ALLEGATIONS

40.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b) on behalf of themselves and a class of all other similarly situated for all direct, proximate and foreseeable losses caused by the February 3, 2023 train derailment, fire and resulting toxic chemical explosion. The Class is hereby defined as follows:

> **All individuals who resided, owned property, worked or operated businesses within a 30-mile radius of 1020 East Taggart Street, East Palestine, Ohio 44413 as of February 3, 2023 ("the Class Zone").**



*Fig. 1: The Class Zone is represented by a radius of 30 miles emanating from the derailment, fire and explosion site.*

41.    Excluded from the Class are: (1) Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded from the Class; government entities; and the judges assigned to this case, their immediate families, and court staff; and (2) insurers and insurance syndicates whose claims for damages regarding the February 3, 2023 train derailment and resulting toxic chemical explosion, arise out of a right of subrogation, whether equitable, contractual or otherwise.

42.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1):** The members of the Class are so that the joinder of all members is impractical. The exact number of Class Members is unknown to Plaintiffs at this time; the proposed Class includes thousands of residents and/or business owners who were exposed to or who had property contaminated by the hazardous chemicals being transported by Norfolk Southern and suffered damages as a result. Class Members

may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

43.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a)   whether Defendants' acts or omissions as set forth above caused the accident resulting in the derailment, fire, and subsequent chemical leaks;

   b)   whether the Plaintiffs and Class Members have suffered a loss of use and enjoyment of property, property damage, diminution of property value and stigma, expenses or other economic damages as a result of the Defendants' acts or omissions as set forth above;

   e)   whether Defendants are liable to Plaintiffs and the Class for punitive damages resulting from the derailment;

   g)   whether medical monitoring and early detection will provide benefits to Plaintiffs and the Class; and

   h)   whether Plaintiffs and the Class are entitled to relief.

44.     **Typicality – Federal Rules of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the claims of the Class Members and arise from the same actions by Defendants. Plaintiffs and Class Members own property, reside in and/or operate a business within the Class Zone surrounding the train derailment, and owned property, resided and/or operated a business in the Class Zone for at all relevant times. Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions in which Defendants engaged.

45.     **Adequacy – Federal Rules of Civil Procedure 23(a)(4):** Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' interests do not conflict with the interest of the Class Members they seek to represent and have no claims antagonistic to the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions and intend to prosecute this action vigorously. Plaintiffs will fairly and adequately protect the interests of Class Members.

46.     **Superiority – Federal Rules of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if the Class Members could afford litigation the court system could not. It is likely that only a few class members could afford to seek legal redress for Defendants' misconduct. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment of common questions of law and fact would be a superior method to multiple individual actions or piecemeal litigation in that class

treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

47. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.

48. The Class is also certifiable pursuant to Federal Rules of Civil Procedure 23(b)(1) and (2) because prosecuting separate action by Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole; and questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I
## NEGLIGENCE
*(On Behalf of Plaintiffs Against All Defendants)*

49. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

50. The Defendants had a duty of care to the Plaintiffs and the Class to inspect, repair, maintain, and operate the trains with which it transported hazardous materials. Defendants knew or should have known of the dangers of failing to inspect, repair, maintain or operate its trains and that such failure was a breach of duty resulting in the damages suffered by the Plaintiffs and the Class Members.

51.     In the alternative, the derailment and subsequent exposure to hazardous chemicals was caused by defective, unfit and/or unsafe equipment, which was in the care, custody and control of Defendants. Defendants knew or should have known of the dangerous, unfit and/or defective condition of this equipment and are therefore liable for them.

52.     The derailment on February 3, 2023 and Plaintiffs' and Class Members' subsequent exposure to hazardous chemicals was caused by the negligence, carelessness and/or recklessness of the Defendants.

53.     Defendants owed Plaintiffs and the Class a duty to use reasonable care in the transportation of hazardous materials. The duties include, but are not limited to the duty to:

i.      operate, maintain, inspect and/or repair the railcars in to ensure their safe and proper operation, particularly when transporting hazardous materials;

ii.     establish proper procedures or systems, including but not limited to alarm systems, for identifying any malfunctions of the in order to prevent or mitigate derailments while transporting hazardous materials, and further establish safety procedures in the event of such a malfunction;

iii.    properly load railcars consistent with accepted practice;

iv.     properly train, manage, and supervise personnel as to matters including but not limited to dealing with fire, emergency braking procedures, derailment, and avoiding exposure to hazardous materials;

v.      ensure adequate staffing levels;

vi.     avoid populated areas when transporting hazardous materials;

vii.    adequately warn those in danger of exposure to hazardous chemicals; and

viii.    timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury.

54.    Defendants breached their duties to Plaintiffs and the Class by failing to:

i.    operate, maintain, inspect and/or repair the railcars in to ensure their safe and proper operation, particularly when transporting hazardous materials;

ii.    establish proper procedures or systems, including but not limited to alarm systems, for identifying any malfunctions of the in order to prevent or mitigate derailments while transporting hazardous materials, and further establish safety procedures in the event of such a malfunction;

iii.    properly load railcars consistent with accepted practice;

iv.    properly train, manage, and supervise personnel as to matters including but not limited to dealing with fire, emergency braking procedures, derailment, and avoiding exposure to hazardous materials;

v.    ensure adequate staffing levels;

vi.    avoid populated areas when transporting hazardous materials;

vii.    adequately warn those in danger of exposure to hazardous chemicals; and

viii.    timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury.

55.    Defendants are strictly liable, jointly and severally, without regard to fault, for all of the damages to Plaintiffs and the Class, which were a direct and proximate result of the train derailment and release of hazardous substances which harmed Plaintiffs and the Class as described above.

56.    As a direct and proximate result of the Defendants' acts or omissions in the course of conducting this abnormally dangerous and/or ultrahazardous activity, Plaintiffs suffer, and will continue to suffer, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

57.    Defendants are strictly liable, jointly and severally, without regard to fault, for all of the damages to Plaintiffs and the Class, which were a direct and proximate result of the train derailment and release of hazardous substances which harmed Plaintiffs and the Class as described above.

58.    Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT II
## STRICT LIABILITY
*(On Behalf of All Plaintiffs Against All Defendants)*

59.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

60.    Defendants are strictly liable for the injuries and damages suffered by Plaintiffs and the Class pursuant to the provisions of the Restatement (Second) of Torts §§ 519 and 520.

61.    The transportation of the toxic and flammable substance vinyl chloride is an abnormally dangerous and/or ultrahazardous activity under the definition set forth in Restatement (Second) of Torts §§ 519 and 520.

62.    The Defendants engaged in an abnormally dangerous and/or ultrahazardous activity for which common law strict liability applies for transporting hazardous substances which Defendants knew to be dangerous and without taking proper precautions.

63.     Had the Defendants not engaged in the abnormally dangerous and/or ultrahazardous activity, Plaintiffs would not have had their property contaminated or been exposed to dangerous levels of vinyl chloride or other toxic substances incurred damages.

64.     As a direct and proximate result of the Defendants' acts or omissions in the course of conducting this abnormally dangerous and/or ultrahazardous activity, Plaintiffs suffer, and will continue to suffer, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

65.     Defendants are strictly liable, jointly and severally, without regard to fault, for all of the damages to Plaintiffs and the Class, which were a direct and proximate result of the train derailment and release of hazardous substances which harmed Plaintiffs and the Class as described above.

66.     Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT III
## MEDICAL MONITORING
(*On Behalf of Plaintiffs Against All Defendants*)

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     Plaintiffs Robert and April Atkinson, and the individual Class Members, have been exposed to vinyl chloride and hazardous chemicals at levels that are far higher than normal background levels. These substances are dangerous toxins that have been proven to cause cancer and other diseases in humans.

69.     The hazardous materials carried by the train, including vinyl chloride, are highly toxic substances.

70.     Plaintiff and Class Members were exposed to these toxic substances, including vinyl chloride and its byproducts like hydrochloric acid and phosgene, due to Defendants' actions, including Defendant's negligent, ultrahazardous, and willful and wanton conduct.

71.     As a proximate result of their exposure to these toxic substances, including vinyl chloride and its byproducts like hydrochloric acid and phosgene, Plaintiffs and Class Members have a significantly increased risk of developing diseases and cancer. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

72.     Plaintiff and the Class should be awarded the costs of such a monitoring regime.

73.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT IV
## PRIVATE NUISANCE
*(On Behalf of All Plaintiffs Against All Defendants)*

74.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

75.     At all times relevant hereto, Defendants knew or should have known that the hazardous chemicals being transported were harmful to real property and human beings, and that improper transportation and handling of these materials were substantially certain to cause injury to Plaintiffs and their property.

76.     Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated real property located in the 30-mile radius surrounding the East Palestine derailment site, including Plaintiffs' land, real property, and persons.

77.     The Defendants' contamination of Plaintiffs' real and personal property has unreasonably interfered with the rights of Plaintiffs to use and enjoy their property, causing them to suffer injuries different in kind and degree from others in surrounding areas. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs to, among other things, refrain from occupying or using their real properties, using contaminated water to drink, cook, bathe, irrigate farmland and gardens, eat from home gardens, or water pets and livestock. This has, in turn, caused significant loss of income, out of pocket expenses, emotional distress and inconvenience.

78.     Defendants' conduct has also substantially interfered with Plaintiffs' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that they so choose. It has also reduced the value of their land.

79.     Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute invasion of the property rights of Plaintiffs.

80.     Plaintiffs have suffered specific injuries as a result of Defendants' tortious conduct, including the pollution of their land.

81.     Defendants' improper transportation and handling of hazardous chemicals constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs to suffer, and will continue to suffer in the future, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

82.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

### COUNT V
### PUBLIC NUISANCE
*(On Behalf of All Plaintiffs Against All Defendants)*

83.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

84.     At all times relevant hereto, Defendants knew or should have known that the hazardous chemicals being transported were hazardous and harmful to real property and human beings, and it was substantially certain that improper transportation and handling of these materials was hazardous and harmful to property and people living in nearby areas.

85.     Plaintiffs and Class Members have a right to enjoy their real property free of dangerous contamination. Defendants' improper transportation and handling of hazardous materials substantially and unreasonably infringed upon these public rights.

86.     As a proximate result of Defendants' improper transportation and handling of vinyl chloride, butyl acrylate, benzene residue, and other combustible liquids, Plaintiffs' and the general public's common right to breathe clean air and have access to clean running water without dangerous levels of toxic and harmful chemicals was severely diminished, if not eliminated.

87.     As a proximate result of Defendants' improper transportation and handling of vinyl chloride, butyl acrylate, benzene residue, and other combustible liquids, Defendants invaded and contaminated the areas surrounding Plaintiffs' and Class Members' residences, thereby exposing them to toxic chemicals and carcinogens.

88.     As a direct and proximate result of Defendants' creation of a public nuisance and the public's exposure to toxic chemicals resulting therefrom, Plaintiff and Class Members suffer,

and will continue to suffer, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for annoyance, upset, aggravation and inconvenience, increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

89.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

**COUNT VI**
**STATUTORY NUISANCE**
(*On Behalf of All Plaintiffs Against All Defendants*)

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     Pursuant to Ohio R.C. § 3704.03, "no person shall cause, permit, or allow emission of an air contaminant in violation of any rule adopted by the director of environmental protection."

92.     As a result of the derailment and subsequent fire and toxic chemical burn, Defendants emitted impermissible amounts of vinyl chloride, an air contaminant.

93.     As a result of Defendants' improper transportation and handling of hazardous materials, Plaintiff and Class Members have been exposed to hazardous air pollutants in violation of Ohio and federal law.

94.     As a direct and proximate result of Defendants' improper transportation and handling of hazardous materials, these materials continuously invaded and contaminated the areas surrounding Plaintiffs, thereby exposing their properties and body to unsafe levels of vinyl chloride, butyl acrylate, benzene residue, and other combustible liquids.

95.     As a direct and proximate result of Defendants' improper transportation and handling of vinyl chloride, butyl acrylate, benzene residue, and other combustible liquids, and the

exposure to these toxins resulting therefrom, Plaintiffs presently suffer, and will continue suffering in the future, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

96.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

### COUNT VII
### TRESPASS
*(On Behalf of All Plaintiffs Against All Defendants)*

97.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

98.     At all times relevant hereto, Defendants knew or should have that the hazardous chemicals being transported were hazardous and harmful to real property, animals, and human beings, and it was substantially certain that their use, emission, discharge, disposal, distribution, spreading and/or release of these hazardous materials would cause injury to Plaintiff and their property.

99.     Defendants allowed hazardous materials to enter and contaminate Plaintiffs' property. They intentionally, knowingly, and negligently used, discharged, spread, deposited and/or released these hazardous materials knowing that those toxins would contaminate the real property and drinking water of individuals like Plaintiffs.

100.     Defendants authorized or caused others to dispose of waste in a manner which they knew was substantially likely to cause hazardous materials to enter and contaminate Plaintiffs' properties.

101.     At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' rights to their land.

102.     Defendants' trespass has also interfered with and continues to interfere with Plaintiffs' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that Plaintiffs so choose.

103.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT VIII
## WILLFUL AND WANTON CONDUCT
### (On Behalf of All Plaintiffs Against All Defendants)

104.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

105.     At all times relevant, Defendants owed a duty to refrain from willful, wanton, reckless and outrageous conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and the Class.

106.     Upon information and belief, Defendants were, at all times relevant, aware that the hazardous materials they transported were highly carcinogenic and/or otherwise harmful to humans.

107.     Upon information and belief, Defendants were, at all times relevant, aware of the health risks associated with the release of vinyl chloride, butyl acetate, benzene residue, phosgene,

and hydrogen chloride into the air, water, and land, including the risk of causing various diseases and cancers.

108.   Upon information and belief, Defendants were at all relevant times aware that their transportation and release of vinyl chloride, butyl acetate, benzene residue, phosgene, and hydrogen chloride could result in the unreasonably dangerous emission of hazardous materials into the surrounding communities.

109.   Upon information and belief, Defendants were aware that at least one railcar was malfunctioning for approximately 20 miles before the derailment occurred.

110.   Notwithstanding this actual knowledge, Defendants breached their duties by, among other things:

    i.    operate, maintain, inspect and/or repair the railcars in to ensure their safe and proper operation, particularly when transporting hazardous materials;

    ii.    establish proper procedures or systems, including but not limited to alarm systems, for identifying any malfunctions of the in order to prevent or mitigate derailments while transporting hazardous materials, and further establish safety procedures in the event of such a malfunction;

    iii.    properly load railcars consistent with accepted practice;

    iv.    properly train, manage, and supervise personnel as to matters including but not limited to dealing with fire, emergency braking procedures, derailment, and avoiding exposure to hazardous materials;

    v.    ensure adequate staffing levels;

    vi.    avoid populated areas when transporting hazardous materials;

    vii.    adequately warn those in danger of exposure to hazardous chemicals;

viii.   timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury; and

ix.   otherwise unreasonably causing injury to Plaintiff as will be determined by further investigation and discovery.

111.   Defendants' failures in these and other respects constitute willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and Class Members.

112.   As a direct and proximate result of Defendants' willful, wanton, reckless and outrageous transportation, emission, discharge, and release of hazardous materials, including vinyl chloride, butyl acetate, benzene residue, phosgene, and hydrogen chloride, throughout the Class zone, Plaintiffs suffer, and will continue suffering in the future, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, annoyance, upset, aggravation, inconvenience and emotional distress, an increased risk of associated disease or illness, and the need for medical monitoring to ensure early detection of any such disease or illness.

113.   Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT IX
## DAMAGES
*(On Behalf of All Plaintiffs Against All Defendants)*

114.   As a direct and proximate result of Defendant's negligence, trespass, and nuisance, Plaintiffs and Class Members have suffered damages including, but not limited to the following:

i.   costs of medical treatment; past, present and future;

    ii.    past, present and future lost wages;

    iii.    past, present and future mental anguish;

    iv.    personal injuries;

    v.    pain and suffering past, present and future;

    vi.    loss of enjoyment of life;

    vii.    loss of use of their property, both personal and real;

    viii.    contamination and loss of value to their property; and

    ix.    other damages will be shown at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against each Defendant as follows:

    a) for an Order certifying the Class, as defined herein, and appointing Plaintiffs and their Counsel to represent the Class;

    b) for damages, including compensatory, punitive and exemplary damages, in an amount determined just and reasonable;

    c) for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

    d) for prejudgment interest on all amounts awarded;

    e) for injunctive and declaratory relief, as allowed by law; and

    f) such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

DATED: February 23, 2023                          Respectfully submitted,


                                                  */s/ Alyson Steele Beridon*
                                                  Alyson Steele Beridon (#87496)
                                                  **BSJ PLLC**
                                                  425 Walnut St.
                                                  Suite 2315
                                                  Cincinnati, OH 45202
                                                  alysonb@bsjfirm.com
                                                  Phone: (513) 259-2289

                                                  Benjamin A. Gastel*
                                                  **BSJ PLLC**
                                                  223 Rosa L. Parks Ave.
                                                  Suite 300
                                                  beng@bsjfirm.com
                                                  Phone: (615) 254-8801

                                                  *application for admission *pro hac vice*
                                                  forthcoming